# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| **DAVID KIAH,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 10-40161-FDS |
| | ) | |
| **AURORA LOAN SERVICES, LLC;** | ) | |
| **MORTGAGE ELECTRONIC SYSTEMS,** | ) | |
| **INC.; UNKNOWN DEFENDANTS: MERS** | ) | |
| **SUBSCRIBING MEMBERS JOHN DOE** | ) | |
| **AND/OR JANE DOE, 1 THRU** | ) | |
| **UNKNOWN, CLAIMING ANY LEGAL** | ) | |
| **OR EQUITABLE RIGHT, TITLE,** | ) | |
| **ESTATE, LIEN, OR INTEREST IN THE** | ) | |
| **PROPERTY DESCRIBED IN THE** | ) | |
| **COMPLAINT ADVERSE TO** | ) | |
| **PLAINTIFF'S TITLE,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

**SAYLOR, J.**

This action arises out of an attempted foreclosure on plaintiff David Kiah's property by Aurora Loan Services, LLC.  Plaintiff is proceeding *pro se*.

Kiah originally filed this complaint in Land Court on July 21, 2010.  It was removed to this Court by defendants on the basis of diversity jurisdiction.  Kiah seeks a declaratory judgment that "the mortgage on record is legally null and void."  (Compl. ¶ 1).  He also seeks $20,000 in damages from Aurora.  Defendants have moved to dismiss for failure to state a claim upon which relief can be granted.  Plaintiff has filed motions styled as motions for judgment on the pleadings, examination of title, and endorsement of lis pendens.  For the reasons stated

below, defendants' motion to dismiss will be granted, and plaintiff's motions will be denied as moot. In essence, the documents submitted by plaintiff with his complaint — such as the mortgage and the mortgage assignment — directly contradict his theories of recovery, and he has neither made sufficient allegations of fraud to satisfy the requirements of Fed. R. Civ. P. 9(b) nor made allegations sufficient to raise a right to relief above the level of sheer speculation.

### I.     Statement of Facts

#### 1.     The Mortgage Loan

On May 24, 2007, David Kiah executed and delivered a promissory note in the amount of $180,000. (Ex. A to Compl. 49). The note was secured by a mortgage on his property at 229 Gardner Road in Hubbardston, Massachusetts. The mortgagee was Mortgage Electronic Registration Systems, Inc. ("MERS"). (Ex. A to Compl. 36). The mortgage was executed that day and recorded at the Worcester South Registry of Deeds. (Compl. ¶ 2; Ex. A to Compl. 34-35).

According to the terms of the mortgage, "MERS is a separate corporation that is acting solely as a nominee for Lender [defined as "First Magnus Financial Corporation"] and Lender's successors and assigns." (Ex. A to Compl. 34).[1]

---

[1] Plaintiff provided an explanation of MERS's role in the mortgage market as an exhibit to his complaint. According to plaintiff, the purpose of MERS is to act as the mortgagee of record for mortgage loans that are registered in its system. (Compl. 20-22). It records the mortgage and tracks ownership of the lien. (*Id.*). When the promissory note is sold (and possibly re-sold) in the secondary mortgage market, the MERS database tracks that transfer. (*See id.*). Mortgage lenders and other entities subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages. (Compl. 22). Members contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system. (*Id.*). As long as the parties involved in the sale are members, MERS remains the mortgagee of record (thereby avoiding recording and other transfer fees that are otherwise associated with the sale) and continues to act as an agent for the new owner of the promissory note. (*Id.*).

For a brief synopsis of MERS and its functions, *see In re: Mortgage Electronic Registration Systems (MERS) Litigation*, 659 F. Supp. 2d 1368, 1370 n.6 (U.S. Jud. Pan. Mult. Lit. 2009); *MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 96 (N.Y. App. Div. 2006).

According to the closing instructions, the "Investor" (presumably, the source of the funds) was Lehman Brothers Bank, FSB. (Ex. D to Compl. 55).

### 2. **The Assignment of the Note and Mortgage**

First Magnus filed for bankruptcy on August 21, 2007, and was administratively dissolved on April 2, 2009. (Compl. ¶¶ 8-9; Ex. C to Compl. 54). It appears that the mortgage loan was securitized; in any event, it is undisputed that the current owner of the debt is presently the Federal National Mortgage Association ("Fannie Mae"). (Compl. ¶¶ 37-44; Ex. G to Compl. 74). The loan is being serviced by Aurora Loan Services, LLC. (*Id.*).

Plaintiff disputes the assignment of the mortgage, but not the note. The note is presently in the possession of Aurora. (Defs.' Opp. to Remand 2).[2]

Aurora alleges that the note and mortgage were assigned to it in June 2007. (Defs.' Mot. to Dismiss 5; Ex. D to Defs.' Opp. to Remand). At that time, no assignment of mortgage was recorded at the Registry of Deeds. (Defs.' Mot. to Dismiss 5).[3]

At some point before January 2010, Kiah stopped making payments on the mortgage, and the loan went into default. Aurora then initiated steps to foreclose on the property.

Plaintiff has attached to the complaint a document entitled "Corporate Assignment of Mortgage." (Ex. B to Compl. 52). The assignment states that the assignor is MERS (as "nominee for First Magnus Financial Corporation . . . it's [sic] successors and assigns") and that

---

[2] Plaintiff and defendants presented two different versions of the note as exhibits to their pleadings. The note attached to plaintiff's complaint is endorsed "in blank." (Ex. A to Compl. 49). The note presented by defendants contains an endorsement to Aurora. (Ex. B to Defs.' Opp. to Remand). Kiah, however, does not dispute that Aurora is the legal holder of the note. (Compl. ¶ 76).

[3] According to defendants, such an assignment is generally not recorded unless the loan goes into default. (Ex. F to Compl. 60; Defs.' Mot. to Dismiss 5).

the assignee is Aurora. (*Id.*). The "Date of Assignment" is listed as January 6, 2010. (*Id.*).

The document also states that the "Effective Date" of the assignment is June 9, 2007—a little more than two weeks after the note and mortgage were executed. (*Id.*). That assignment was recorded in the Worcester South Registry of Deeds on January 19, 2010. (*Id.*).

### 3. Land Court Proceedings

On January 20, 2010, Aurora filed a complaint in Land Court seeking a judgment that Kiah is not in active military service and is not entitled to the protections of the Service Members Civil Relief Act, 50 App. U.S.C. § 533.[4] After Kiah challenged Aurora's standing to bring such an action, Aurora produced the note and recorded the assignment of the mortgage. (Ex. A to Defs.' Mot. to Dismiss 2). As a result, the Land Court found that Aurora was the current holder of the promissory note and assignee of record of the mortgage.

On July 23, 2010, Kiah filed suit against Aurora and MERS in Land Court seeking to invalidate the mortgage and demanding damages for fraudulent conveyance and slander of title. On August 20, 2010, Aurora and MERS removed this lawsuit to this Court.

On September 30, 2010, Kiah filed a Chapter 13 bankruptcy petition. His bankruptcy petition was dismissed on October 7, 2010, for failure to file a Chapter 13 plan within the time provided by the court.

---

[4] The SMCRA prohibits filing of civil suits against active duty services members and service members who had been on active duty in the prior year.

## II. Analysis

### A. Standard of Review

On a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). Material attached to a complaint, or incorporated by reference, are a part of the pleading itself, and the Court may consider them on a motion to dismiss. *Trans-Spec Truck Serv. v. Caterpillar*, 524 F.3d 315, 321 (1st Cir. 2008). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

In his complaint, plaintiff essentially contends that MERS did not have the power to assign the mortgage to Aurora and that Aurora therefore cannot foreclose on the property because it is not the mortgagee. As noted, he does not challenge the validity of the note or Aurora's right to collect on the debt evidenced by the note. He sets forth multiple theories of recovery, as set forth below.

### 1.     Whether the Mortgage and Assignment Are Void Because MERS Had No Legal Power to Act after First Magnus Was Dissolved

Plaintiff contends that First Magnus declared bankruptcy, and was dissolved, before the mortgage was assigned to Aurora; that MERS could not act on behalf of a non-existent entity; and that therefore MERS did not have the legal power to transfer the mortgage to Aurora. He further asserts that the assignment of the mortgage and the mortgage itself are void as a result.

Defendant, of course, contends that the assignment of the mortgage actually occurred in June 2007, but simply was not recorded until January 2010. In any event, plaintiff cannot succeed on his theory, because he does not challenge the validity of the assignment of the note to Aurora.[5] That admission is fatal to his claim. By law, the transfer of the note automatically transfers the underlying security, even without a formal assignment. *See Carpenter v. Longan*, 83 U.S. 271, 275 (1872) ("transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter"). Any rights in the mortgage held by First Magnus were therefore transferred with the note. *See id.* Furthermore, and as plaintiff also acknowledges, MERS had the power to act as the agent of the note holder, even after transfer to a new holder. Plaintiff's theory that the note and the mortgage somehow became disconnected from one another, and that the mortgage should disappear as a result, is not tenable as a matter of law.

Accordingly, both the mortgage and the assignment of the mortgage appear to be valid. The complaint alleges no plausible basis to conclude otherwise, and accordingly this theory is without merit and fails to state a claim.

---

[5] If the assignment of the note was valid, it necessarily implies that First Magnus had the power to transfer the note.

### 2.      Whether MERS Could Only Act as Nominee for First Magnus and Not for Any of Its "Successors and Assigns"

Plaintiff further contends that MERS only had authority to act as a nominee for First

Magnus and not as an "executor, administrator, successor or assigns [sic] of lender, attorney-in-

fact, or anything else in connection with the mortgagee." (Compl. ¶ 24).  The plain language of

the mortgage, however, states that MERS was acting as nominee for First Magnus and its

"successors and assigns."  (*See* Ex. A Compl. 34).  The complaint does not suggest any plausible

basis under which that language should be disregarded, and thus fails to state a claim as to that

theory of recovery.

### 3.      Whether First Magnus Could Have Transferred the Mortgage to Anyone Other Than Lehman Brothers

Plaintiff next contends that Lehman acquired the note by transfer from First Magnus

shortly after closing and paid a premium for the note over its face value.  (Compl. ¶ 28).

Plaintiff contends that once "First Magnus . . . sold its interest[,] MERS could not sell or transfer

it again on behalf of First Magnus."  (Compl. ¶ 30).

The premise of this claim appears to be that First Magnus and/or MERS somehow

attempted to sell the same note twice.  But that is not what the exhibits submitted by plaintiff

show.  According to plaintiff's own allegations, Lehman Brothers acquired the debt from First

Magnus.  But even assuming that Lehman actually acquired the note (as opposed to, for

example, the contractual right to receive payment on the obligation), it does not follow that

MERS thereby lost any capacity to act.  Indeed, MERS was expressly granted the right to act on

behalf of First Magnus and its "successors and assigns."  Accordingly, even assuming that First

Magnus sold its interest in the note to Lehman, MERS retained the power to transfer the

mortgage on behalf of Lehman as First Magnus's successor. In other words, the mortgage explicitly granted MERS the power that plaintiff claims it did not have.

The complaint offers no plausible allegations as to why that provision should be disregarded. As to that theory, therefore, the complaint fails to state a claim upon which relief can be granted.

### 4. Whether the Assignment of Mortgage Was Fraudulent

Plaintiff and defendants agree that Fannie Mae owns the underlying debt, and that Aurora is the servicer and therefore has both "the right to enforce the Note and . . . the right to receive payment of the debt on behalf of [Fannie Mae]." (Compl. ¶ 32; Defs.' Mot. to Dismiss 6). Plaintiff, however, contends that Aurora cannot be the mortgagee if Fannie Mae is the owner of the debt and therefore that the assignment of mortgage to Aurora is fraudulent. (Compl. ¶ 33-36, 39-44).

Plaintiff appears to misapprehend the role of a servicing agent. Aurora—as servicer—acts on behalf of Fannie Mae. *See Peoples Mortg. Co. v. Federal Nat. Mortg. Ass'n*, 856 F. Supp. 910, 917-18 (E.D. Pa.. 1994). As the servicer, Aurora has the right to foreclose on the mortgage on Fannie Mae's behalf. *In re O'Kelley*, 2010 WL 3984666, at *1 (D. Hawaii 2010). Indeed, Fannie Mae generally requires servicers to initiate legal proceedings in the servicer's name if the servicer or MERS is the mortgagee of record. *Id.* After the servicer forecloses, Fannie Mae requires the servicer to convey title of the property to it. *Id.* Therefore, Aurora, as Fannie Mae's agent, has the right both to collect on the debt and to foreclose on the mortgage. *See id.*

Plaintiff also contends that the assignment was "an act of fraudulently conveying and

slandering Plaintiff's title in furtherance of a conspiracy to conceal the trading of the note." (Compl. ¶ 35).  To the extent the complaint is alleging a claim of fraud, it does not meet the pleading requirements of Fed. R. Civ. P. 9(b).  Among other things, the complaint must "[a]t a minimum . . . allege the time, place and contents of the alleged misrepresentation as well as the identity of the person making them."  *Petricca v. Simpson*, 862 F. Supp. 13, 15-16 (D. Mass. 1994) (quoting *Keith v. Stoelting*, Inc., 915 F.2d 996, 1000 (5th Cir. 1990).  Read liberally, this claim alleges that Aurora—the servicer—misrepresented (presumably to MERS or to Fannie Mae) that it had the right to foreclose on the mortgage and thereby obtained the assignment of mortgage fraudulently.  (Compl. ¶¶ 32-33).  As noted above, Aurora, as servicer for Fannie Mae, appears to have the right to collect on plaintiff's note and to foreclose on his mortgage.  There is simply nothing in the complaint that would plausibly suggest that the assignment to Aurora was procured by fraud.

In short, there is nothing illegal or improper in the fact that Aurora acts as a servicing agent, and the complaint makes out no plausible claim that anything in the arrangement between Aurora and Fannie Mae is illegal or improper.  As to that theory, therefore, the complaint fails to state a claim upon which relief can be granted.

### 5. Whether the Use of the Term "Successors and Assigns" Was Valid

As noted, the mortgage and assignment state that MERS is the nominee for First Magnus and its "successors and assigns."  (Ex. B to Compl. 52).  Plaintiff contends that the phrase "successors and assigns" cannot be used "as a wildcard for whatever (undisclosed) person is the current holder of the note."  (Compl. ¶ 45).  Plaintiff argues that the mortgage and the assignment are voidable because they misrepresent the parties to the contract.  (*See* Compl. ¶

45).

There is nothing in the use of the commonplace phrase "successors and assigns" that suggests any fraud or other impropriety. The phrase simply makes clear that the note and mortgage may be assigned and that MERS may continue to act as an agent for the new owners. Furthermore, plaintiff does not allege that the use of the term induced him to enter into the contract, or that he justifiably relied on the alleged misrepresentation. *See Commerce Bank & Trust Co. v. Hayeck*, 46 Mass. App. Ct. 687, 692 (Mass. App. Ct. 1999). To the extent that the complaint rests on this theory, it fails to state a claim upon which relief can be granted.

### 6.     Whether the Assignment Is Void for Lack of Consideration

Plaintiff further contends that the assignment of mortgage was without consideration and is therefore void.[6] Under the circumstances presented here, this is nothing more than sheer speculation, with no specific facts to support it. Furthermore, and in any event, it is difficult to see why plaintiff has standing to assert such a claim, and how in any event he has suffered a compensable injury if the consideration was not paid. Such implausible allegations are insufficient to survive a motion to dismiss.

### 7.     Whether the Assignment Is Invalid Because It Is Backdated

The assignment of mortgage has a "Date of Assignment" of January 6, 2010, but an "Effective Date" of June 9, 2007. Plaintiff contends that the assignment of mortgage was therefore backdated, and that this "backdating" "lacks economic substance[,]" is "frivolous[,]" and should be disregarded. (Compl. ¶¶ 53-58).

Again, defendants contend that the assignment occurred in June 2007, and simply was

---

[6] The assignment of mortgage recites consideration of ten dollars. (Compl. ¶¶ 46-52; Ex. B to Compl. 52).

not recorded until January 2010. But even if the Court assumes the assignment occurred in January 2010 instead of June 2007, plaintiff's claim still fails. Massachusetts law requires only that the assignment of mortgage be executed and recorded prior to the publication of the notice of sale. *See U.S. Bank Nat. Ass'n v. Ibanez*, 2009 WL 795201, at *5-9 (Mass. Land Ct. 2009) (noting that Massachusetts requires a foreclosing party have a valid assignment of mortgage at the time of notice and sale, but does *not* require assignment to be "of record" at that time) (citing *Bottomly v. Kabachnick*, 13 Mass. App. Ct. 480, 483-84 (Mass. App. Ct. 1982)). The backdating thus has no legal effect, at least in this context.

Plaintiff also asserts that the backdating of the document is "part of the scheme and conspiracy of fraudulent conveyance." (Compl. ¶ 56). As noted above, for an allegation of fraud to survive a motion to dismiss, plaintiff must "allege the . . . contents of the alleged misrepresentation." *Petricca*, 862 F. Supp. at 15-16. Read liberally, this claim alleges that Aurora misrepresented the date on which it actually was assigned the mortgage. Aurora, however, did not misrepresent anything, as it disclosed both the "date of assignment" and the "effective date" on the assignment of mortgage, and there is no claim of justifiable reliance on the part of plaintiff. Therefore, this claim fails to state any allegations of fraud at all, much less allegations sufficient to satisfy the heightened pleading requirements of Rule 9(b). *See* Fed. R. Civ. Pro. 9(b).

### 8. Whether MERS Could Have Assigned the Mortgage

Plaintiff further contends that an assignment of a mortgage is invalid unless the note is transferred with it. (Compl. ¶¶ 59-73). He alleges that MERS could not have assigned the mortgage because it never had physical possession of or a beneficial interest in the note, and

therefore that the assignment of the mortgage to Aurora is void. (Compl. ¶¶ 70, 73 (citing *Carpenter*, 83 U.S. at 274)).

"[W]here a mortgage and the obligation secured thereby are held by different persons, the mortgage is regarded as an incident to the obligation and, therefore, held in trust for the benefit of the owner of the obligation." *Boruchoff v. Ayvasian*, 323 Mass. 1, 10 (Mass. 1948). Even assuming MERS never had possession of or a beneficial interest in the note, this claim must fail because legally MERS was holding the mortgage in trust for Aurora. *See id.* The assignment of mortgage, therefore, would still be valid even assuming plaintiff's allegations are true.

Plaintiff also alleges that MERS never had a beneficial interest in the mortgage and therefore did not have legal capacity to assign it. (Compl.¶ 67). MERS is the "nominee" for First Magnus's successors. (Ex. A to Compl. 34). A "nominee" is a "person designated to act in place of another, usu[ally] in a very limited way" or a "party who hold bare legal title for the benefit of others." *Black's Law Dictionary* 1076 (8th ed. 2004)*; see Landmark Nat'l Bank v. Kesler*, 289 Kan. 528, 538 (2009) (summarizing various opinions concerning the role of MERS). Therefore, even though MERS does not have a beneficial interest in the property, it nonetheless could have transferred the mortgage on its behalf of the beneficial owner. *See id.*

Again, plaintiff's claims are contradicted by the very documents that he submitted with the complaint, and there is no plausible basis to suggest that those documents should be disregarded.

### 9. Whether There Was a Fraudulent Conveyance and Slander of Title

Finally, plaintiff contends generally that the assignment of mortgage from MERS to Aurora was a fraudulent conveyance and slander of title. (Compl. 75). He does not, however,

allege with specificity the circumstances constituting that fraud as required by Rule 9(b). Fed. R. Civ. Pro. 9(b); *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985) (noting that mere allegations of fraud cannot satisfy the particularity requirement, "no matter how many times such accusations are repeated"). These theories accordingly will not support a claim for relief.

### III. Conclusion

For the foregoing reasons, defendants' motion to dismiss is GRANTED. Plaintiff's motions for judgment on the pleadings, title examination, and endorsement of lis pendens are DENIED as moot.

**So Ordered.**

                                          /s/ F. Dennis Saylor
                                          F. Dennis Saylor IV
                                          United States District Judge

Dated: November 16, 2010