UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DAVID KIAH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 10-40161-FDS |
| | ) | |
| AURORA LOAN SERVICES, LLC; MORTGAGE ELECTRONIC SYSTEMS, INC.; and UNKNOWN DEFENDANTS: MERS SUBSCRIBING MEMBERS JOHN DOE AND/OR JANE DOE, 1 THRU UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFF'S TITLE, | ) | |
| Defendants. | ) | |

## AMENDED MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

**SAYLOR, J.**

This action arises out of an attempted foreclosure on plaintiff David Kiah's property by Aurora Loan Services, LLC. Plaintiff is proceeding *pro se*.

Kiah originally filed this complaint in Land Court on July 21, 2010. It was removed to this Court by defendants on the basis of diversity jurisdiction. Kiah seeks a declaratory judgment that "the mortgage on record [is] legally null and void." (Compl. ¶ 76). He also seeks $20,000 in damages from Aurora plus court costs and attorney's fees. (*Id.* ¶¶ 77-78).

On September 17, 2010, defendants moved to dismiss for failure to state a claim upon which relief can be granted. Plaintiff filed motions styled as motions for judgment on the

pleadings, examination of title, and endorsement of lis pendens on September 28, 29, and 30, respectively. On November 16, this Court granted defendants' motion to dismiss the complaint for failure to state a claim and denied plaintiff's motions as moot.

This is an amended order arising from an intervening clarification of the law. Kiah has filed motions for reconsideration and to set aside the judgment pursuant to Fed. R. Civ. P. 60(b). On January 7, 2011, the Massachusetts Supreme Judicial Court issued its opinion in *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637 (2011). That decision, among other things, clarifies the requirements for mortgage foreclosures in Massachusetts.

After considering *Ibanez* and the arguments of the parties, the Court concludes that dismissal was proper. For the reasons stated below, plaintiff's motions for reconsideration and to set aside the judgment will be denied, and the Court's previous order, in amended form, will remain in place.

In essence, the documents submitted by plaintiff with his complaint — such as the mortgage and the mortgage assignment — directly contradict his theories of recovery, and he has neither made sufficient allegations of fraud to satisfy the requirements of Fed. R. Civ. P. 9(b) nor made allegations sufficient to raise a right to relief above the level of sheer speculation.

## I. Statement of Facts

### A. The Mortgage Loan

On May 24, 2007, David Kiah executed and delivered a promissory note in the amount of $180,000. (Compl. Ex. A). The note was secured by a mortgage on his property at 229 Gardner Road in Hubbardston, Massachusetts. The mortgagee was Mortgage Electronic Registration Systems, Inc. ("MERS"). (*Id.*). The mortgage was executed that day and recorded at the

2

Worcester South Registry of Deeds. (Compl. ¶ 2, Ex. A).

According to the terms of the mortgage, "MERS is a separate corporation that is acting solely as a nominee for Lender [defined as "First Magnus Financial Corporation"] and Lender's successors and assigns."  (Compl. Ex. A).[1]

According to the closing instructions, the "Investor" (presumably, the source of the funds) was Lehman Brothers Bank, FSB.  (Compl. Ex. D).

### B.     The Assignment of the Note and Mortgage

First Magnus filed for bankruptcy on August 21, 2007, and was administratively dissolved on April 2, 2009.  (Compl. ¶¶ 8-9, Ex. C).  It appears that the mortgage loan was securitized; in any event, it is undisputed that the current owner of the debt is presently the Federal National Mortgage Association ("Fannie Mae").  (Compl. ¶¶ 37-44, Ex. G).  The loan is being serviced by Aurora Loan Services, LLC.  (*Id.*).

Plaintiff disputes the assignment of the mortgage.  It is undisputed that Aurora presently possesses the note and has the right to enforce the note.  (Def. Opp'n to Remand at 2, Ex. B; Pl.

---

[1] Plaintiff provided an explanation of MERS's role in the mortgage market as an exhibit to his complaint. (*See* Def. Notice of Removal Ex. 4).  According to plaintiff, the purpose of MERS is to act as the mortgagee of record for mortgage loans that are registered in its system.  (*Id.*).  It records the mortgage and tracks ownership of the lien.  (*Id.*).  When the promissory note is sold (and possibly re-sold) in the secondary mortgage market, the MERS database tracks that transfer.  (*See id.*).  Mortgage lenders and other entities subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages.  (*Id.*) Members contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system.  (*Id.*).  As long as the parties involved in the sale are members, MERS remains the mortgagee of record (thereby avoiding recording and other transfer fees that are otherwise associated with the sale) and continues to act as an agent for the new owner of the promissory note.  (*Id.*).  To facilitate the execution of assignments from MERS, MERS regularly designates "certifying officers," who are typically employees of MERS member firms.  *See In re Moreno*, 2010 WL 2106208, at *2 (Bankr. D. Mass. May 24, 2010).  MERS authorizes these employees, through formal corporate resolutions, to execute assignments on its behalf.  *Id.*

For a discussion of MERS and its functions, *see MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90 (N.Y. 2006).

Mot. for Recons. at 18).[2]

Aurora alleges that the note and mortgage were assigned to it in June 2007. (Def. Mot. to Dismiss at 5; Def. Opp'n to Remand Ex. D). At that time, no assignment of mortgage was recorded at the Registry of Deeds. (Def. Mot. to Dismiss at 5).[3]

At some point before January 2010, Kiah stopped making payments on the mortgage, and the loan went into default. Aurora then initiated steps to foreclose on the property.

Plaintiff has attached to the complaint a document entitled "Corporate Assignment of Mortgage." (Compl. Ex. B). The assignment states that the assignor is MERS (as "nominee for First Magnus Financial Corporation . . . it's [sic] successors and assigns") and that the assignee is Aurora. (*Id.*). The "Date of Assignment" is listed as January 6, 2010. (*Id.*).

The document also states that the "Effective Date" of the assignment is June 9, 2007—a little more than two weeks after the note and mortgage were executed. (*Id.*). That assignment was recorded in the Worcester South Registry of Deeds on January 19, 2010. (*Id.*).

### C.    Land Court Proceedings

On January 20, 2010, Aurora filed a complaint in Land Court seeking a judgment that Kiah is not in active military service and is not entitled to the protections of the Service Members

---

[2] Plaintiff and defendants presented two different versions of the note as exhibits to their pleadings. The note attached to plaintiff's complaint is endorsed "in blank." (Compl. Ex. A). The note presented by defendants contains an endorsement to Aurora. (Def. Opp'n to Remand Ex. B). Kiah, however, does not dispute that Aurora is currently in possession of the note and has a "substantive right to enforce the note and mortgage as a holder." (Pl. Mot. for Recons. at 18). He also does not request a declaration that the transfer of the note to Aurora is void. (*See* Compl. ¶¶ 76-80).

[3] According to defendants, such an assignment is generally not recorded unless the loan goes into default. (Compl. Ex. F; Def. Mot. to Dismiss at 5).

Civil Relief Act, 50 App. U.S.C. § 533.[4]  After Kiah challenged Aurora's standing to bring such an action, Aurora produced the note and recorded the assignment of the mortgage.  *See Aurora Loan Servs., LLC v. David Kiah*, No. 10 MISC 420743 (HMG), 2-3 (Mass.\ Land Ct. Sept. 8, 2010).  As a result, the Land Court found that Aurora was the current holder of the promissory note and assignee of record of the mortgage.

On July 23, 2010, Kiah filed suit against Aurora and MERS in Land Court seeking to invalidate the mortgage and demanding damages for fraudulent conveyance and slander of title.  On August 20, 2010, Aurora and MERS removed the lawsuit to this Court.

On September 30, 2010, Kiah filed a Chapter 13 bankruptcy petition.  His bankruptcy petition was dismissed on October 7 for failure to file a Chapter 13 plan within the time provided by the court.

On November 16, this Court granted defendants' motion to dismiss the complaint for failure to state a claim, and Aurora foreclosed on November 22.  On the same day, plaintiff filed a motion for reconsideration.  He then filed a notice of appeal on December 10.  Finally, on December 23, he filed a motion in this Court to set aside the judgment pursuant to Fed. R. Civ. P. 60(b).

On January 7, 2011, the Massachusetts Supreme Judicial Court issued the *Ibanez* opinion, and the Court subsequently issued a memorandum taking plaintiff's post-judgment motions under advisement.[5]

---

[4] The SMCRA prohibits filing of civil suits against active duty services members and service members who had been on active duty in the prior year.

[5] Because a notice of appeal has been filed, the Court's review of these motions is governed by the procedures set forth in *Puerto Rico v. SS Zoe Colocotroni*, 601 F.2d 39, 42 (1st Cir. 1979).  Under *Colocotroni*, the Court may assess post-judgment motions and dismiss them if they are without merit.  *Id.*  If the court cannot dispose of such motions without further consideration, however, it must issue a brief memorandum taking those

**II.	Standard of Review**

On a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). Materials attached to a complaint, or incorporated by reference, are a part of the pleading itself, and the Court may consider them on a motion to dismiss. *Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 321 (1st Cir. 2008). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and textual alterations omitted).

As noted above, this order has been amended in response to plaintiffs motion to set aside judgment pursuant to Fed. R. Civ. P. 60(b). The evaluation of a motion for reconsideration brought pursuant to Rule 60(b) is "committed to the district court's sound discretion." *Stonkus v. City of Brockton Sch. Dep't*, 322 F.3d 97, 100 (1st Cir. 2003). The rule provides several grounds for relief from a judgment or order, including "mistake, inadvertence, surprise, or excusable neglect," and "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (60)(b)(6). Motions under this rule are ordinarily granted only when exceptional circumstances are present,

---

motions under advisement and stating the number of additional days required to complete its review and issue an order. The issuance of the *Ibanez* decision prompted the Court to issue such a memorandum here.

but "district courts have broad discretion to determine whether such circumstances exist." *Ahmed v. Rosenblatt*, 118 F.3d 886, 891 (1st Cir. 1997). The contours of Rule 60(b)(6), the "catch-all" provision, are "particularly malleable," and the Court's "decision to grant or deny such relief is inherently equitable in nature." *Ungar v. Palestinian Liberation Org.*, 599 F.3d 79, 83, 84 (1st Cir. 2010).

## III. Analysis

In his complaint, plaintiff essentially contends that MERS did not have the power to assign the mortgage to Aurora and that Aurora therefore cannot foreclose on the property because it is not the mortgagee. As noted, he does not dispute Aurora's possession of the note or challenge Aurora's substantive right to enforce the note. He sets forth multiple theories of recovery, as discussed below.

### A. Whether the Mortgage and Assignment Are Void Because MERS Had No Legal Power to Act for First Magnus' "Successors and Assigns"

Plaintiff contends that First Magnus declared bankruptcy, and was dissolved, before the mortgage was assigned to Aurora; that MERS could not act on behalf of a non-existent entity; and that therefore MERS did not have the legal power to transfer the mortgage to Aurora. He further asserts that the assignment of the mortgage and the mortgage itself are void as a result.

Defendant contends that the assignment of the mortgage actually occurred in June 2007, but simply was not recorded until January 2010. In any event, plaintiff cannot succeed on his theory, because he does not challenge the validity of the assignment of the *note* to Aurora. That admission is fatal to his claim. By law, the transfer of the note automatically transfers an equitable interest in the underlying mortgage, even without a formal assignment. *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 652 (2011) ("[T]he holder of the mortgage holds the mortgage in trust for

7

the purchaser of the note, who has an equitable right to obtain an assignment of the mortgage. . ."); *see also Carpenter v. Longan*, 83 U.S. 271, 275 (1872) ("The transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter. If not assignable at law, it is clearly so in equity."). An equitable right to the mortgage was therefore transferred to Aurora along with the note.[6] Plaintiff's theory that the note and the mortgage somehow became disconnected from one another, and that the mortgage should disappear as a result, is therefore not tenable as a matter of law.

In any case, and as plaintiff also acknowledges, MERS had the power to act as the agent of any valid note holder under the terms of the mortgage documents. The plain language of the mortgage states that MERS was acting as nominee for First Magnus and its "successors and assigns." (*See* Compl. Ex. A). First Magnus' dissolution would not prevent its successors and assigns, including Aurora, from seeking transfer of the mortgage from MERS.

Accordingly, the dissolution of First Magnus would not and could not prevent Aurora from obtaining an assignment of the mortgage from MERS, both as a matter of law and according to the arrangement that existed between MERS and Aurora as a "successor and assign" of First Magnus. The complaint alleges no plausible basis to conclude otherwise, and accordingly this theory is without merit and fails to state a claim.

### B. Whether First Magnus Could Have Transferred the Mortgage to Anyone Other Than Lehman Brothers

Plaintiff next contends that Lehman Brothers Bank, FSB acquired the note by transfer

---

[6] As *Ibanez* makes clear, however, a mere equitable right to the mortgage is not enough to foreclose on a property. "In Massachusetts, where a note has been assigned but there is no written assignment of the mortgage underlying the note, the assignment of the note does not carry with it the assignment of the mortgage." *Ibanez*, 458 Mass. at 652. To foreclose, the note holder must first exercise its equitable right to obtain the mortgage through a "valid written assignment . . . or a court order of assignment." *Id.* at 653.

from First Magnus shortly after closing and paid a premium for the note over its face value. (Compl. ¶ 28). Plaintiff contends that once "First Magnus . . . sold its interest[,] MERS could not sell or transfer it again on behalf of First Magnus." (Compl. ¶ 30).

The premise of this claim appears to be that First Magnus and/or MERS somehow attempted to sell the same note twice. But that is not what the exhibits submitted by plaintiff show. According to plaintiff's own allegations, Lehman Brothers acquired the debt from First Magnus. But even assuming that Lehman actually acquired the note (as opposed to, for example, the contractual right to receive payment on the obligation), it does not follow that MERS thereby lost any capacity to act. Indeed, MERS was expressly granted the right to act on behalf of First Magnus and its "successors and assigns." Accordingly, even assuming that First Magnus sold its interest in the note to Lehman, MERS retained the power to transfer the mortgage on behalf of Lehman as First Magnus's successor. In other words, the mortgage explicitly granted MERS the power that plaintiff claims it did not have.

The complaint offers no plausible allegations as to why that provision should be disregarded. As to that theory, therefore, the complaint fails to state a claim upon which relief can be granted.

### C. Whether the Assignment of Mortgage Was Fraudulent

Plaintiff and defendants agree that Aurora is the servicer and therefore has both "the right to enforce the Note and . . . the right to receive payment of the debt on behalf of [the owner of the debt]." (Compl. ¶ 32; Def. Mot. to Dismiss at 6). Plaintiff, however, contends that Aurora cannot be the mortgagee if another entity owns the debt and that the assignment of mortgage to Aurora is therefore fraudulent. (Compl. ¶¶ 33-36, 39-44).

9

Plaintiff appears to misapprehend the role of a servicing agent. As servicer, Aurora acts on behalf of the owner of the debt—in this case, Fannie Mae. *See Peoples Mortg. Co. v. Federal Nat'l Mortg. Ass'n*, 856 F. Supp. 910, 917-18 (E.D. Pa. 1994). As the servicer, Aurora has the right to foreclose on the mortgage on Fannie Mae's behalf. *See In re O'Kelley*, 2010 WL 3984666, at *1 (D. Haw. Oct. 8, 2010). Indeed, Fannie Mae often requires servicers to initiate legal proceedings in the servicer's name if the servicer or MERS is the mortgagee of record. *Id.* After the servicer forecloses, Fannie Mae generally requires the servicer to convey title of the property to it. *Id.* Therefore, Aurora, as Fannie Mae's agent, has the right both to collect on the debt and to foreclose on the mortgage. *See id.*

Plaintiff also contends that the assignment was "an act of fraudulently conveying and slandering Plaintiff's title in furtherance of a conspiracy to conceal the trading of the note." (Compl. ¶ 35). To the extent the complaint is alleging a claim of fraud, it does not meet the pleading requirements of Fed. R. Civ. P. 9(b). Among other things, the complaint must "[a]t a minimum . . . allege the time, place and contents of the alleged misrepresentation, as well as the identity of the person making them." *Petricca v. Simpson*, 862 F. Supp. 13, 15-16 (D. Mass. 1994) (citing *Keith v. Stoelting*, Inc., 915 F.2d 996, 1000 (5th Cir. 1990). Read liberally, this claim alleges that Aurora—the servicer—misrepresented (presumably to MERS or to Fannie Mae) that it had the right to foreclose on the mortgage and thereby obtained the assignment of mortgage fraudulently. (Compl. ¶¶ 32-33). As noted above, Aurora, as servicer for Fannie Mae, appears to have the right to collect on plaintiff's note and to foreclose on his mortgage. There is simply nothing in the complaint that would plausibly suggest that the assignment to Aurora was procured by fraud.

In short, there is nothing illegal or improper in the fact that Aurora acts as a servicing agent, and the complaint makes out no plausible claim that anything in the arrangement between Aurora and Fannie Mae is illegal or improper. As to that theory, therefore, the complaint fails to state a claim upon which relief can be granted.

### D. Whether the Use of the Term "Successors and Assigns" Was Valid

As noted, the mortgage and assignment state that MERS is the nominee for First Magnus and its "successors and assigns." (Compl. Ex. B). Plaintiff contends that the phrase "successors and assigns" cannot be used "as a wildcard for whatever (undisclosed) person is the current holder of the note." (Compl. ¶ 45). Plaintiff argues that the mortgage and the assignment are voidable because they misrepresent the parties to the contract. (*See id.*).

There is nothing in the use of the commonplace phrase "successors and assigns" that suggests any fraud or other impropriety. The phrase simply makes clear that the note and mortgage may be assigned and that MERS may continue to act as an agent for the new owners. Furthermore, plaintiff does not allege that the use of the term induced him to enter into the contract, or that he justifiably relied on the alleged misrepresentation. *See Commerce Bank & Trust Co. v. Hayeck*, 46 Mass. App. Ct. 687, 692 (1999). To the extent that the complaint rests on this theory, it fails to state a claim upon which relief can be granted.

### E. Whether the Assignment Is Void for Lack of Consideration

Plaintiff further contends that the assignment of mortgage was without consideration and is therefore void.[7] Under the circumstances presented here, this is nothing more than sheer speculation, with no specific facts to support it. Furthermore, and in any event, it is difficult to

---

[7] The assignment of mortgage recites consideration of ten dollars. (Compl. ¶¶ 46-52, Ex. B).

see why plaintiff has standing to assert such a claim, and how in any event he has suffered a compensable injury if the consideration was not paid. Such implausible allegations are insufficient to survive a motion to dismiss.

> **F. Whether the Assignment Is Invalid Because It Is Backdated or Because the Assignor Lacked Signatory Authority**

The assignment of mortgage has a "Date of Assignment" of January 6, 2010, but an "Effective Date" of June 9, 2007. Plaintiff contends that the assignment of mortgage was therefore backdated, and that this "backdating" "lacks economic substance[,]" is "frivolous[,]" and should be disregarded. (Compl. ¶¶ 53-58).

Defendants contend that the assignment occurred in June 2007, and simply was not recorded until January 2010. But even if the Court assumes the assignment occurred in January 2010 instead of June 2007, plaintiff's theory fails. Massachusetts law requires only that the assignment of mortgage be executed and recorded prior to the publication of the notice of sale. *See Ibanez*, 458 Mass. at 651 (noting that Massachusetts requires a foreclosing party have a valid assignment of mortgage at the time of notice and sale, but does *not* require assignment to be "in recordable form" at that time). The backdating thus has no legal effect, at least in this context.[8]

In his motion to set aside the judgment, plaintiff asserts a new and alternative theory that the mortgage assignment was ineffective because MERS' signing officer, Theodore Schultz,

---

[8] Plaintiff also asserts that the backdating of the document is "part of the scheme and conspiracy of fraudulent conveyance." (Compl. ¶ 56). As noted above, for an allegation of fraud to survive a motion to dismiss, plaintiff must "allege the . . . contents of the alleged misrepresentation." *Petricca*, 862 F. Supp. at 15-16. Read liberally, this claim alleges that Aurora misrepresented the date on which it actually was assigned the mortgage. Aurora, however, did not misrepresent anything, as it disclosed both the "date of assignment" and the "effective date" on the assignment of mortgage, and there is no claim of justifiable reliance on the part of plaintiff. Therefore, this claim fails to state any allegations of fraud at all, much less allegations sufficient to satisfy the heightened pleading requirements of Rule 9(b). *See* Fed. R. Civ. P. 9(b).

12

lacked signatory authority at the time of the assignment to Aurora. Plaintiff contends that the assignment—and, by extension, the foreclosure sale—are void.

This argument is also without merit. First, Schultz appears to have had signatory authority on the date of the assignment. Defendants have submitted a MERS "Corporate Resolution" that predates the assignment and grants such authority to an "attached list of candidates," including Schultz. (*See* Def. Opp'n to Mot. to Set Aside J. Ex. C).[9] This is confirmed by the fact that MERS, a defendant in this case, does not contest the assignment.

Second, even if Schultz lacked the authority to assign the mortgage, this would not invalidate the assignment under Massachusetts law. Mass. Gen. Laws ch. 183 § 54B provides:

> Notwithstanding any law to the contrary, a[n] . . . assignment of mortgage . . . if executed before a notary public, justice of the peace or other officer entitled by law to acknowledge instruments, whether executed within or without the commonwealth, by a person purporting to hold the position of . . . vice president, . . . secretary, . . . or other similar office, including assistant to any such office or position, of the entity holding such mortgage, or otherwise purporting to be an authorized signatory for such entity . . . shall

---

[9] Plaintiff contends that the exhibits related to Schultz's signatory authority are a "fraud on the court." (Def. Mot. to Set Aside J. at 2). It is unclear, however, how the Court has been the subject of a fraud. The relevant documents appear to have been created in accordance with MERS practices for authorizing and assigning mortgages. *(See* Def. Opp'n to Mot. to Set Aside J. at 6); *see also In re Jessup*, 2010 WL 2926050, at *3 (Bankr. E.D. Ky. July 22, 2010). While those practices are arguably unusual, the Court does not appear to have been misled by the filings, and other courts have relied on similar assignments from MERS. *See In re Lopez*, 2011 WL 576820, at *5 (Bankr. D. Mass. Feb. 9, 2011) (MERS assignment system creates "a complete and facially valid chain of title establishing that it holds the Mortgage"); *In re Moreno*, 2010 WL 2106208, at *2-4 (Bankr. D. Mass. May 24, 2010) (suggesting MERS transfer system is valid where MERS officer is an employee or agent of the note holder); *see also In re Mortg. Elec. Registration Sys. (MERS) Litigation*, 2011 WL 251453, at *8 (D. Ariz. Jan. 25, 2011) ("The MERS system is not fraudulent, and MERS has not committed any fraud."); *Golliday v. Chase Home Finance, LLC*, 2011 WL 31038, at *1 (W.D. Mich. Jan. 5, 2011) (assignment of mortgage using MERS system was valid absent further evidence of fraud); *In re Jessup*, 2010 WL 2926050, at *6 (Bankr. E.D. Ky. July 22, 2010) (MERS assignments are valid where a person has been appointed under the MERS system or where the transfer is subsequently ratified by MERS); *Randle v. GMAC Mortg., LLC*, 2010 WL 3984714, at *1 (Mass. Land. Ct. Oct. 12, 2010) (treating MERS assignment as valid without describing details of that assignment); *Amtrust Bank v. TD Banknorth, N.A.*, 2010 WL 1019638, at *1 (Mass. Land Ct. Mar. 22, 2010) (same). *But see HSBC Bank USA, N.A. v. Yeasmin*, 2010 WL 2089273, at *6 (N.Y. Sup. Ct. May 24, 2010) (calling the MERS assignment system "the mortgage twilight zone" and comparing it to a "journey into a wondrous land of imagination"); *Aurora Loan Servs., LLC v. Judith Mendes da Costa*, No. 09-142-CA, 3 (Fla. Cir. Ct. Apr. 28, 2010) ("MERS has no substantive rights itself, and, therefore, cannot assign what it does not have.").

be binding upon such entity . . . .

Mass. Gen. Laws. ch. 183 § 54B. It is undisputed that Shultz purported to be a vice president and assistant secretary of MERS at the time of the assignment and supported this with a "Corporate Resolution" from the Board of Directors of MERS. (*See* Def. Opp'n to Mot. to Set Aside J. Ex. C). Furthermore, the assignment was executed before a notary public. (*See* Compl. Ex. B). In this case, the clear language of § 54B provides that the assignment would be binding.

*Ibanez* does not require a different result. In *Ibanez*, the Massachusetts Supreme Judicial Court held that a foreclosure sale made by a party who holds the note but not the mortgage is void as a matter of law. 458 Mass. at 656-57. In that case, the note holders provided no evidence of assignment prior to foreclosure. *Id.* at 642-44. Here, there was a facially valid assignment of the mortgage from MERS to Aurora prior to the foreclosure sale. *See In re Lopez*, 2011 WL 576820, at *5 (Bankr. D. Mass. Feb. 9, 2011) (suggesting that lack of signatory authority would be a "latent defect[]" that could not interrupt a "facially valid chain of title establishing that [assignee] holds the Mortgage"). To the extent the assignment is defective, *Ibanez* would require, at most, that a confirmatory assignment be executed and recorded. *See Ibanez*, 458 Mass. at 654.

### G. Whether MERS Could Have Assigned the Mortgage

Plaintiff further contends that an assignment of a mortgage is invalid unless the note is transferred with it. (Compl. ¶¶ 59-73). He alleges that MERS could not have assigned the mortgage because it never had physical possession of or a beneficial interest in the note, and therefore that the assignment of the mortgage to Aurora is void. (Compl. ¶¶ 70, 73) (citing *Carpenter*, 83 U.S. at 274).

14

"[T]he holder of the mortgage holds the mortgage in trust for the purchaser of the note, who has an equitable right to obtain an assignment of the mortgage." *Ibanez*, 458 Mass. at 652; *Boruchoff v. Ayvasian*, 323 Mass. 1, 10 (1948) ("[W]here a mortgage and the obligation secured thereby are held by different persons, the mortgage is regarded as an incident to the obligation, and, therefore, held in trust for the benefit of the owner of the obligation."). Even if MERS never had possession of or a beneficial interest in the note, this claim must fail because MERS was holding the mortgage in trust for Aurora. *See id.* The assignment of mortgage, therefore, would still be valid.

Plaintiff also alleges that MERS never had a beneficial interest in the mortgage and therefore did not have legal capacity to assign it. (Compl. ¶ 67). MERS is the "nominee" for First Magnus's successors and assigns. (Compl. Ex. A). A "nominee" is a "person designated to act in place of another, usu[ally] in a very limited way" or a "party who hold bare legal title for the benefit of others." *Black's Law Dictionary* 1076 (8th ed. 2004)*; see Landmark Nat'l Bank v. Kesler*, 289 Kan. 528, 538 (2009) (summarizing various opinions concerning the role of MERS). Therefore, even though MERS does not have a beneficial interest in the property, it nonetheless could have transferred the mortgage on its behalf of the beneficial owner. *See id.*

Again, plaintiff's claims are contradicted by the very documents that he submitted with the complaint, and there is no plausible basis to suggest that those documents should be disregarded.

### H. Whether There Was a Fraudulent Conveyance and Slander of Title

Finally, plaintiff contends generally that the assignment of mortgage from MERS to Aurora was a fraudulent conveyance and slander of title. (Compl. ¶ 75). He does not, however, allege with specificity the circumstances constituting that fraud as required by Rule 9(b). Fed. R.

Civ. P. 9(b); *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985) (noting that mere allegations of fraud cannot satisfy the particularity requirement, "no matter how many times such accusations are repeated"). These theories accordingly will not support a claim for relief.[10]

## IV. Conclusion

For the foregoing reasons, defendants' motion to dismiss is GRANTED. Plaintiff's motions for judgment on the pleadings, title examination, and endorsement of lis pendens are DENIED as moot. Plaintiffs' motion for reconsideration and motion to set aside judgment are DENIED.

**So Ordered.**

          /s/ F. Dennis Saylor  
          F. Dennis Saylor IV  
          United States District Judge

Dated: March 3, 2011

---

[10] None of plaintiff's remaining arguments in his motions for reconsideration and to set aside the judgment merit relief from the Court's dismissal of the complaint. Under these circumstances, the Court declines to exercise its discretion under Fed. R. Civ. P. 60(b) to afford plaintiff relief from its prior judgment. Accordingly, plaintiff's motions for reconsideration and to set aside the judgment will be denied, and the order granting defendants' motion to dismiss will remain in place.